UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| WORLD HERITAGE ANIMAL GENOMIC RESOURCES, INC. and LUCINDA CHRISTIAN, )<br>)<br>)<br>)<br>Plaintiffs,     )<br>)<br>v.             )<br>)<br>LAURA WRIGHT and GEICO INDEMNITY COMPANY,       )<br>)<br>)<br>Defendants.    ) | Civil No. 5:19-cv-00199-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on GEICO's Motion for Summary Judgment. [R. 91.] It argues that the Plaintiffs' remaining claims against it—common law and statutory bad faith—are not supported by law or fact. Ms. Christian was in a vehicle accident with GEICO's insured while driving a truck owned by World Heritage Animal Genomic Resources, Inc., resulting in bodily injury and property damage claims against GEICO. Though both were eventually settled, the Plaintiffs brought this action contending that GEICO acted in bad faith in resolving the claims. GEICO now moves for summary judgment in its favor, arguing that there is no genuine issue as to whether it acted in bad faith. For the reasons outlined below, the Motion for Summary Judgment will be **GRANTED**.

**I**

Lucinda Christian, driving a truck owned by World Heritage, was involved in a vehicle accident with Laura Wright on March 31, 2017. [R. 1-1.] Ms. Wright's vehicle was insured by Hartford and Ms. Wright herself was insured by GEICO. [*See* R. 37-4.] Accordingly, Hartford

was the primary insurer and GEICO was the excess insurer. *Id.* Ms. Christian settled her claim against Hartford for the policy's maximum coverage in January 2018 but, believing it was insufficient, also demanded excess coverage from GEICO. [R. 91-2 at 1-2.] GEICO believed her demand "raised legitimate questions about the nature and extent of her accident-related injuries and the value of her claim." *Id.* at 2. Nevertheless, GEICO offered her the policy's maximum bodily injury coverage on November 5, 2018.[1] [R. 91-5.]

Simultaneously, World Heritage demanded $48,607.63 in property damage coverage from Hartford for damage to its truck and its contents caused by the accident. [R. 91-6.] It settled its claim with Hartford for $43,871.19. [R. 91-7.] It then demanded $23,292.49 plus the cost of a rental truck from GEICO. [R. 91-8 at 1.] The increase from the initial demand was because in the interim, allegedly due to the damage to its truck, it had to pay to ship animals to California and multiple animals died due to conditions that would not be present had they been moved earlier. *Id.* at 1-2. GEICO did not believe it was obligated to pay for those business losses because they were incidental to the accident and Hartford had already paid $10,000 to cover World Heritage's animal relocation costs. [R. 91-2 at 4.] But to resolve the claim, it offered World Heritage $4,736.44, the difference between its initial demand and eventual settlement with Hartford. *Id.* World Heritage did not accept this offer. After this action was filed, World Heritage accepted GEICO's second offer to settle the demand for $17,677.60, which exhausted its property damage coverage limitation. *Id.*

Ms. Christian and World Heritage filed this action in Kentucky state court on March 29, 2019, bringing four distinct claims: negligence and statutory negligence against Ms. Wright and

---

[1] Mr. Burch's affidavit mistakenly states that this offer was made on November 5, 2022. [R. 91-2 at 3.] The offer itself is dated November 18, 2018. [R. 91-5.]

2

a Kentucky Unfair Claims Settlement Practices Act violation and common law bad faith claim against GEICO. [R. 1-1 at 2-4.] The parties agreed to dismiss the claims against Ms. Wright, so only the claims against GEICO remain. [R. 58.] GEICO moves for summary judgment on both, arguing that the Plaintiffs have not established that it acted in bad faith. [R. 91-1.] The motion is ripe for review.

## II

### A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering summary judgment arguments, a federal court applies Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

3

functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

The Court notes that its impartiality has apparently "been called into question." [R. 101 at 2.] The Plaintiffs seek "affirmation by this [C]ourt that it will be fair and impartial in resolving this case" because letters from defense counsel indicate this Court has a "favorable summary judgment standard" and "will be looking for a way to dismiss these claims. *Id.* As it always does, the Court will apply the appropriate legal standards to the facts at hand and determine whether the motion before it should be granted.

### B

Kentucky law recognizes four categories of bad faith claims against insurance companies: (1) common law third-party bad faith, which may occur when a liability insurer fails to settle a tort claim against its insured; (2) common law first-party bad faith, which occurs when an insurer refuses to pay the claim of its own insured under a first-party policy provision; (3) first-party bad faith under the Kentucky Consumer Protection Act ("KCPA"); and (4) first-party and third-party bad faith under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), which "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured" and sets forth a list of particular duties and practices which constitute unfair claims settlement. *See Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006) (detailing the KUCSPA); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526-27 (6th Cir. 2006) (describing the four categories of bad faith claims). The Plaintiffs bring two of these claims against GEICO: common law third-party bad faith and third-party bad faith under the KUCSPA. [R. 1-1 at 3-4.] GEICO seeks summary judgment on both. [R. 91.]

4

"A single test under Kentucky law exists for the merits of bad-faith claims, whether brought . . . under common law or statute." *Rawe*, 462 F.3d at 527. This test is set forth in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), which has been described as "the leading case on 'bad faith' in Kentucky" and "the culmination of the development of 'bad faith liability in [Kentucky] jurisprudence." *See Rawe*, 462 F.3d at 527 (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000)). Pursuant to *Wittmer*, a claimant alleging bad faith against an insurance company must prove three elements in order to prevail:

> (1) the insurer must be obligated to pay the claim under the terms of the policy;
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*See* 864 S.W.2d at 890.

A plaintiff cannot bring a private cause of action "for a mere technical violation" of the KUCSPA. *Rawe*, 462 F.3d at 533. Rather, "a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Id.* (quoting *Motorists Mutual Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)). Put another way, "[b]efore the cause of action [for bad faith] exists in the first place, there must be evidence sufficient to warrant punitive damages." *Wittmer*, 864 S.W.2d at 890; *see also by Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 738 n.11 (Ky. 2016) (noting a bad faith claim in Kentucky is essentially a punitive action). The Sixth Circuit has described this prerequisite as a "high threshold standard that requires evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages." *Phelps v. State Farm Mutual Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (internal quotation marks and citations omitted). Notably, the second and third elements

of the *Wittmer* test also turn on evidence similar to this threshold inquiry. *See id.* at 704 (citing *Cobb King v. Liberty Mutual Ins. Co.*, 54 F. App'x 833, 838 (6th Cir. 2003)).

### 1

GEICO first contends that it did not settle Ms. Christian's bodily injury claim in bad faith because her claimed damages were fairly debatable, it did not act with reckless disregard for her claim, and as a matter of law, it promptly paid her. [R. 91-1 at 15-20.]

### a

The record clearly establishes that GEICO offered Ms. Christian the full bodily-injury policy coverage of $25,000 on November 5, 2018. [R. 91-5.] The parties' primary disagreement is over when GEICO received Ms. Christian's medical documents. GEICO's obligation to pay Ms. Christian, a necessary element of a bad faith claim, was not triggered until it received these documents. *Wittmer*, 864 S.W.2d at 890; *Corio v. Nat'l Specialty Ins. Co.*, 2019 Ky. App. LEXIS 345, at *14 (Ky. Ct. App. May 17, 2019) (finding an insurer was not obligated to pay a claimant when the extent of her injuries was unclear because she had not shared her medical records with the insurer). GEICO claims it received the documents on October 18, 2018. [R. 91-1 at 18-19.] It cites to the affidavit of George Burch III, a supervisor with GEICO. [R. 91-2.] He "thoroughly reviewed" the case file, which automatically logs received items and cannot be altered, and "can conclusively testify that GEICO did not receive Ms. Christian's treatment records prior to October 18, 2018." *Id.* at 3. Ms. Christian, relying on testimony from two individuals—Ms. Davis-Berry and Mr. Blakeny—who allegedly sent the documents, claims that they were sent to GEICO in November 2017 and January 2018. [R. 101 at 3-4; R. 104 at 6.] She believes that GEICO's adjusters "are lying" about not receiving Ms. Christian's records and carried out a "false and fraudulent scheme" by eliminating record entries showing that GEICO

6

received the records.  [R. 101 at 27.]  Accordingly, she claims that GEICO was obligated, and knew it was obligated, to pay her in January 2018 at the latest, so it acted in bad faith by not resolving the claim until November.  *Id.*

No reasonable jury would review the presented evidence and conclude that GEICO received the medical documents prior to October 18, 2018.  First, the affidavit of Ms. Davis-Berry, a claims adjuster with Hartford, does not establish that GEICO received the documents in January 2018.  [R. 91-12.]  Ms. Christian communicated a desire to have Ms. Davis-Berry send the documents to GEICO and attempted to make her settlement with Hartford "contingent" on receiving confirmation of such.  [R. 103 at 36-37.]  However, this contingency was not recorded in the settlement.  *Id.* at 47.  Ms. Davis-Berry confirmed to Ms. Christian that she faxed the documents in a phone call which occurred at some point in 2018 and a September 2018 email.  [R. 103 at 51, 159.]  However, she has since clarified that she only recalls "trying" to send them and noted that she had received errors when attempting to send faxes in the past.  [R. 103 at 27.]  She believes she sent them through a specific Hartford system which automatically creates notations when the fax is sent and received.  [R. 91-12 at 2.]  No notations had been made in Ms. Christian's file, indicating that the documents were not faxed.  *Id.*  Ms. Davis-Berry also did not know the date on which she sent the records or to which number they were sent.  *Id.*  Ultimately, she does "not know whether GEICO actually received the medical records that [she] intended to send to GEICO."  *Id.*

At most, there is evidence to show that Ms. Davis-Berry attempted to send Ms. Christian's medical documents to GEICO in January 2019.  But there is no evidence to suggest that GEICO received the documents.  All a party asserting that its opponent received its fax "has to do is make a simple telephone call . . . to affirm actual receipt of the fax."  *Riley & Ephriam*

7

*Constr. Co. v. United States*, 408 F.3d 1369, 1373 (Fed. Cir. 2005). There is no indication of such a call or any other proof that the documents were received. The proof actually shows the documents were not received because both GEICO and Hartford's record keeping systems would have automatically recorded receipt, both did not, and GEICO's representative swore in an affidavit that the documents were not received. [R. 91-12 at 2, R. 91-2 at 3.] Accordingly, there is no evidence that GEICO received the records from Ms. Davis-Berry.

Ms. Christian also relies on testimony from Mr. Evan Blakeny, Vice President of World Heritage, that he sent the records to GEICO on the same date that he sent them to Hartford in late 2017. [R. 91-11 at 2; R. 46-2.] There is no record of this, and he did not know where he copied the records, where he mailed them from, how he received the address to send them to, where he bought the envelope containing the records, the address they were mailed to, or the amount of stamps he used. [R. 91-11 at 2-12.] GEICO argues he "has nothing but his memory to prove that he mailed the records," so his "vague and unverifiable testimony does not create an issue of fact as to when GEICO received Christian's medical records." [R. 91-1 at 19-20.]

There is no proof that the documents were received by GEICO, so Ms. Christian can only create a genuine issue through the mailbox rule. Under this rule, a party asserting that they mailed an item is entitled to a presumption that the item was received by the recipient. But the presumption only arises when there is "some evidence" supporting mailing. *Daniel Boone Lumber Co. v. Nabors*, 2007 U.S. Dist. LEXIS 3800, at *9 (E.D. Ky. Jan. 18, 2007) (citing *Haven Point Enterprises, Inc., v. United Kentucky Bank, Inc.*, 690 S. W.2d 393 (Ky 1985)). Evidence supporting mailing requires "proof that the document was 'properly addressed, had sufficient postage, and was deposited in the mail.'" *Laird v. Norton Healthcare, Inc.*, 442 Fed. App'x 194, 198 (6th Cir. 2011) (quoting *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985)).

8

This proof includes "signed receipts from certified mail and documentation of mailing contained in a party's business records." *Id.* (citing *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007)).

Mr. Blakeny's testimony does not warrant the mailbox rule's presumption of receipt, so it is insufficient to create a genuine issue that the records were mailed to GEICO earlier than October 2018. No receipt or record exists establishing he sent them. The only evidence is Mr. Blakeny's assertion that he did so, which is not supported by any specific recollection of the details. [R. 91-11 at 2-12.] The record does include a letter from Mr. Blakeny with GEICO's address on it dated November 17, 2017, but there is no evidence that it was sent. [R. 103 at 162.] Mr. Blakeny's bare assertion that he sent the records, unsupported by any documentation, is insufficient to invoke the mailbox rule's presumption of receipt and create a genuine issue of material fact. Even if his testimony established that he sent the documents, the mailbox rule precludes a conclusion that they were *received*. Notably, Ms. Christian did not respond to the Defendants' invocation of this rule. [*See generally* R. 101.]

GEICO's record keeping system establishes that it received Ms. Christian's medical documents on October 18, 2018. *Id.* Ms. Christian's assertion that GEICO received them earlier, either from Ms. Davis-Berry or Mr. Blakeny, is not supported by any evidence. Ms. Davis-Berry's affidavit only shows that she *tried* to fax the documents, but nothing suggests they were received. Mr. Blakeny's recollection that he mailed them is belied by a lack of any supporting proof, so there is no presumption or evidence that GEICO received them. Perhaps most compelling is that fact that two distinct entities—Hartford's fax record keeping system and GEICO's record keeping log—would have automatically recorded GEICO's receipt of the documents and neither did. [R. 91-12 at 2, R. 91-2 at 3.] Further, GEICO twice contacted Ms.

Christian and requested her medical documents. [R. 103 at 97, 193.] These communications further corroborate GEICO's record that it received the documents in late 2018 because it would not have repeatedly asked for the documents if they were in its possession.

Ms. Christian presents a convoluted argument that GEICO's activity log does not show earlier receipt of the medical records because it was altered. [R. 101 at 10-13.] In April 2017, Ms. Christian's GEICO case activity log mentions the law firm of Dallas & Turner. [R. 103 at 88.] She contends that she did not retain Dallas & Turner until July 2018, so they could only have been mentioned in the log if it was "manipulated." [R. 101 at 11.] Even if this speculative claim was sufficient to show that the file could be altered, no evidence shows that Ms. Christian's file was altered to delete any record that GEICO received her records earlier. There is no specific allegation about through whom, when, or why this could have occurred. This claim is unsupported by any "specific facts" showing the file was manipulated to delete references to her medical records and is far too speculative to create a genuine issue. *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 832 (6th Cir. 2005).

Accordingly, the evidence establishes that GEICO received Ms. Christian's medical records on October 18, 2018. [R. 91-2 at 3.] It offered her its full bodily injury policy limit just eighteen days later. [R. 91-5.] In no way could an eighteen-day processing time constitute bad faith. Accordingly, GEICO is entitled to summary judgment on Ms. Christian's bad faith claims against it.

b

Even if the evidence definitively established that GEICO received Ms. Christian's medical records in late 2017, it would still be entitled to summary judgment. To succeed on a bad faith claim, a plaintiff must show there was no reasonable basis to deny the claim and the

10

insurer either knew or acted in reckless disregard to the existence of a claim. *Wittmer*, 864 S.W.2d at 890. When the alleged bad faith is an excessive delay between being informed of the claim and settling it, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Glass*, 996 S.W.2d at 452. However, "[w]hile a 'mere delay' does not constitute bad faith, courts have found delays in the range of eighteen months to three years 'may serve as evidence of bad faith.'" *Argotte v. Northwestern Mutual Life Ins.*, 99 F. Supp. 3d 726, 733 (W.D. Ky. 2015) (quoting *Phelps*, 736 F.3d at 706-07 (collecting cases)). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000).

As an initial matter, GEICO could not have become obligated to pay the policy until January 18, 2018, at the earliest. Ms. Christian settled her bodily injury claim against Ms. Wright through Hartford, the primary insurer, on this date. [R. 37-4.] Under Kentucky law, excess insurers do not owe coverage until the primary coverage is exhausted. *Glass*, 996 S.W.2d at 453 (citing *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 674 (Ky. 1974)). GEICO was the secondary insurer to Hartford, so it could not have been liable until Ms. Christian exhausted Hartford's coverage on January 18. However, the record indicates that GEICO was not informed of the settlement until months later. GEICO's activity log shows that it was not informed of the Hartford settlement until August 17, 2018. [R. 91-1 at 3.] Ms. Christian presents no evidence to the contrary. She merely stated in her affidavit that Ms. Davis-

11

Berry confirmed in an email that she informed Ms. Battle at GEICO of the settlement. [R. 104 at 6.] This email is not in the record.

Even if GEICO was informed of the settlement when it was agreed to on January 18, it would not have acted unreasonably to take ten months to settle Ms. Christian's claim because there were legitimate reasons to dispute it. GEICO argues the extent of Ms. Christian's demand was disputable because it appeared to claim damages based on pre-existing conditions, one condition appeared to not be diagnosed until months after the accident, no physician recommended the surgeries Ms. Christian claimed were necessary, her medical records appeared to be redacted by hand, and there was no basis for her lost wages claim. [R. 91-2 at 2-3.] For example, one of Ms. Christian's claimed injuries was to her knee but her medical records show that she had at least four prior knee surgeries. [R. 104 at 3-4; R. 91-4.] When a claimant has a "history of physical complaints not dissimilar to the physical complaints she attributes to the accident," the insurer is justified in contesting its liability for those damages. *Hollaway*, 497 S.W.3d at 739. With a long history of knee problems, GEICO would be entitled to investigate whether the claimed knee injury was in fact caused by the accident.

Ms. Christian's claim for lost wages was also fairly debatable. Her demand stated that "as a direct result of the crash, [she] lost out on a substantial job opportunity that would have provided $120,000 in annual income." [R. 91-3 at 1.] This "new" opportunity was to serve as CEO of World Heritage beginning in April 2017, which she was apparently unable to accept because she was "physically incapacitated, requiring multiple surgeries and extensive rehabilitation in order to return to wellness and be fit to assume her role as CEO." [R. 103 at 34.] But in May 2017, she was actively serving as President of World Heritage. [*See* R. 91-7 at 1.] She had been President since 1998 and had never been paid a salary. [R. 103 at 150.] When

12

asked to explain the difference between the roles, she stated the CEO would "oversee" the organization while the President "develop[ed]" the project. *Id.* at 152-53. The roles had drastically different pay but few discernable differences in responsibilities and it was not clear why she could perform one but not the other. Therefore, "numerous factual disputes" surrounded the lost wages claim, making it fairly debatable and justifying the delay. *Madison v. Nationwide Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 108685 at *16-17 (W.D. Ky. Aug. 1, 2013).

Ultimately, a bad faith claim requires "intentional misconduct." *Hollaway*, 497 S.W.3d at 739. There is no compelling allegation of such. Even if GEICO received Ms. Christian's records in early 2018, it would be reasonable to delay its settlement offer because in many aspects, her claimed damages were "fairly debatable." *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv.*, 880 S.W.3d 886, 889-90 (Ky. Ct. App. 1994). Ms. Christian challenges GEICO's assertion that the claim was debatable because it offered the full policy limit just eighteen days after it states it received her medical documents. [R. 101 at 25-26.] She believes it hypocritical to contend that the claim was debatable when it was settled so quickly. *Id.* But GEICO did not offer its policy limits because it had analyzed the claim and determined it was well-founded. Rather, the claim was so significant that its insured would be exposed to a "substantial verdict that would put [her] in financial peril," so GEICO decided to offer its policy limits. [R. 91-2 at 3.] The fact that GEICO did offer the policy limits shortly after it received the medical documents does not change the Court's analysis that the claim was fairly debatable. Altogether, GEICO is entitled to summary judgment on Ms. Christian's bad faith claims because it settled her claim shortly after being informed of it. Even if it had been informed of the claim earlier, it was fairly debatable, so the delay was reasonable and not evidence of bad faith. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000).

2

World Heritage also maintains its contention that GEICO handled its property damage claim in bad faith. World Heritage demanded $23,292.49 plus the cost of a rental truck from GEICO. It claimed that the damage to its truck delayed and required it to make alternative arrangements for its move to California and that many animals died from circumstances they would not have faced if they had been moved earlier. [R. 91-8.] Though it did not believe it was obligated to World Heritage, GEICO offered it $4,736.44 to settle the claim in September 2017. [R. 91-1 at 11; R. 91-8 at 7.] This amount reflected the difference between the amount World Heritage received from Hartford and its original demand from Hartford. [R. 91-1 at 11; R. 91-8 at 7.] World Heritage rejected this offer, but GEICO made payments to another individual involved in the accident and for World Heritage's rental vehicle costs "to protect World Heritage from a collection action." On January 27, 2020, it offered the remaining property damage coverage of $17,677.60. [R. 91-2 at 4.]

World Heritage believes GEICO was proceeding in bad faith because it "ignored the fact that, as a result of the accident, World Heritage was denied the opportunity to obtain a six-million-dollar farm in the central valley of California." [R. 101 at 27.] It argues "it was claims handling on the part of the GEICO claims adjusters which caused World Heritage to lose ownership of the California property worth 6.4 million dollars." *Id.* at 28. The Court previously dismissed the Plaintiffs' claims for business and animal losses. [R. 56.] It found that World Heritage's claimed business losses—namely, the California lease—were not "fairly traceable" to GEICO's alleged bad faith handling of the property damage claim. *Id.* at 6. GEICO argues that this Order entitles it to summary judgment because it establishes that it did not have a legal obligation to pay for these losses, precluding the bad faith claim. [R. 91-1 at 22-23.] In

14

response, World Heritage does not address this ruling. [R. 101 at 26-28.] Rather, it emphasizes that World Heritage lost the California deal "forever" because it "needed the funds from the settlement of its property damage claim with GEICO and settlement of the bodily injury claim of Ms. Christian against GEICO in order to help fund the move to California." *Id.* at 27. The Court clearly prohibited this claim by prior order. [R. 56.] Accordingly, GEICO is entitled to summary judgment on World Heritage's bad faith claims against it because it was not obligated to make these payments.

C

While GEICO's Motion for Summary Judgment was pending before the Court, the Plaintiffs filed a Motion requesting oral argument. [R. 117.] They indicated that GEICO made "misleading statements" in its Reply to which they are entitled to respond but can only do so at oral argument. *Id.* The Court denied the motion because it was procedurally improper and there are no grounds warranting oral argument, but indicated that the Plaintiffs could achieve the relief they sought by seeking leave to file a sur-reply. [R. 123.] They did so, and included their proposed sur-reply.

Sur-replies are generally disfavored in federal court. *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481-82 (6th Cir. 2003). Because the Federal Rules of Civil Procedure do not provide for a sur-reply, granting a sur-reply should be the rare exception rather than the Court's common practice. One circumstance in which leave to file a sur-reply should be granted is when the opposing party raises new arguments or evidence in their reply. *Id.* The Plaintiffs do not identify a single new argument or piece of evidence from GEICO's reply. [R. 124.] The proposed sur-reply challenges GEICO's framing of numerous factual disputes. *Id.* The Plaintiffs construe the arguments in GEICO's reply as "misleading statements." *Id.* But they

15

merely disagree with GEICO's framing of the facts and view of the legal issues in this matter, which is to be expected in the inherently adversarial legal process. For example, the Plaintiffs claim that GEICO's statement that it had a reasonable basis to dispute Ms. Christian's claim is misleading. *Id.* at 12. But whether the claim was disputable is a legal issue to be determined in the bad faith analysis, not an incorrect factual assertion. Other allegedly "misleading statements" focus on GEICO's conclusions about the evidence presented, such as "the plaintiff has presented no evidence to prove that plaintiff's claim was worth more than $100,000." *Id.* at 9. GEICO is permitted to reach and argue in favor of a different conclusion than the Plaintiffs. Most importantly, the Plaintiffs do not establish that any of these statements were raised in the Reply but not the Motion, which is necessary to justify leave to file a sur-reply. *Seay*. 338 F.3d at 482. Accordingly, the Plaintiffs' motion for leave is denied.

## III

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant GEICO's Motion for Summary Judgment **[R. 91]** is **GRANTED**;

2. The Plaintiffs' Motion for Leave to File Sur-Reply **[R. 124]** is **DENIED**;

3. The case is hereby **STRICKEN** from the record;

4. All pending motions are **DENIED AS MOOT [R. 80; R. 92; R. 93; R 94; R. 95; R. 96; R. 97; R. 122]**, and;

5. An appropriate judgment will be entered contemporaneously herewith.

This the 6th day of September, 2022.

Gregory F. Van Tatenhove
United States District Judge